735 So.2d 717 (1999)
STATE of Louisiana, Appellee,
v.
Jason L. MOREAU, Appellant.
No. 31,879-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*719 Louisiana Appellate Project by Amy C. Ellender, Mer Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Brian King, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
On July 9, 1998, Defendant, Jason L. Moreau ("Defendant"), was convicted, by a unanimous jury, of criminal damage to property over $500. On July 13, 1998, Defendant filed a motion for post-verdict judgment of acquittal, which was denied by the trial court on July 14, 1998. On that same date, Defendant was sentenced to one year at hard labor; that term was suspended and he was placed on supervised probation for one year. The trial court imposed the special conditions that Defendant serve four days in the parish jail, with credit for time served, and pay $850 in restitution. The trial court also assessed Defendant a $500 fine plus court costs, and in the default thereof, to serve 90 days in jail. For the reasons stated herein, we affirm Defendant's conviction and remand to the trial court for resentencing in accordance with this opinion.

FACTS
On December 26, 1997, at approximately 5:30 a.m., Newton Gillespie ("Mr.Gillespie"), a security guard with Hurrah's casino, observed a male dressed in a dark shirt or jacket throwing neon bulbs off the Texas Street Bridge. Mr. Gillespie was too far away to identify any other features of the perpetrator; but Mr. Gillespie testified that when the perpetrator became aware that he was watching him, the man began walking east on the bridge, toward Bossier City. Mr. Gillespie did not observe anyone else on the bridge. He immediately called the Shreveport Police who were on the bridge within 1½ minutes of the call. Officer J.R. Curtis spotted Defendant walking east, toward Bossier City. Officer Curtis stopped Defendant and questioned him regarding the incident. Officer Curtis testified that Defendant indicated at that time that he had been at Brick Town, a night club in downtown Shreveport, playing pool and that he was walking home, to Haughton. Although he was able to walk, Defendant was visibly intoxicated, with bloodshot eyes and slurred speech. He denied climbing on the bridge and breaking the lights. A few minutes later, Shreveport policeman Corporal C.K. Taylor arrived at the scene to find Defendant already in custody and in the back of Officer Curtis' patrol car.
The officers investigated the area on the bridge and discovered pieces of glass in the vicinity. After arresting Defendant, the officers drove down to the parking lot and investigated the area where the bulbs fell. They discovered several broken neon bulbs on the ground around a vehicle, below the area where the individual was seen throwing the bulbs from the bridge.
Officer Curtis noted in his report that Defendant was wearing a black sweatshirt, blue jeans and work boots that were covered in areas by a gray residue. Testimony at trial was that the gray residue matched the paint on the bridge girders. In addition to the residue, small fragments of glass were found on Defendant's clothing. *720 Photos of Defendant and his clothing, depicting the gray residue, were taken at the City Jail and were introduced by the State at trial. Neither Mr. Gillespie nor Officers Curtis and Taylor could positively identify Defendant as the individual who had been seen throwing the neon bulbs from the bridge.
Sandra Wilemon, of the Shreveport Regional Arts Council, testified that she was in charge of the maintenance of the lights on the bridge. Ms. Wilemon stated that the last time she had inspected the bridge, prior to this incident, she found no broken lights. After learning that some of the bulbs had been broken, Ms. Wilemon inspected the bridge and found several broken lights. She then called Super Neon to inspect and replace the broken bulbs. Her uncontroverted testimony at trial was that the cost of replacing the bulbs, including charges for installation, totaled $844.53.
Defendant testified in his own defense, denying that he had thrown any neon lights from the bridge. He testified that he had been drinking and playing pool all night at Brick Town. Defendant denied that the material on his clothing was from the bridge but, instead, insisted that it was from working on Christmas Day installing and repairing garage doors and from playing pool. Defendant claims he was just in the wrong place at the wrong time.

DISCUSSION
Defendant presents two assignments of error: (1) that there was insufficient evidence to support the jury's verdict, and (2) that the trial court erred in sentencing him, an indigent defendant, to serve jail time in default of paying the ordered fine and costs of $500 and in making payment of restitution a condition of probation.

Sufficiency of the evidence
Defendant was convicted of violating La. R.S. 14:56, which reads in pertinent part:
A. Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.
In his first assignment of error, Defendant asserts that the circumstantial evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was, in fact, the individual who damaged the neon bulbs. Defendant further argues that the State failed to prove that the damages sustained were in excess of $500. We find Defendant's arguments to be without merit on both counts.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal. See Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (1992).
In all cases where an essential element of the crime is not proven by direct evidence, La. R.S. 15:438 applies. As an evidentiary rule, it restrains the fact finder in the first instance, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, *721 431 So.2d 372 (La.1982); State v. Hammontree, 363 So.2d 1364 (La.1978). The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the State to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
In denying Defendant's motion for post-verdict judgment of acquittal, the trial court stated:
I got a copy of the motion yesterday, and I have had a chance to review it. The Court has again reviewed the motion for post-verdict judgment of acquittal. The Court believes that the motion has no merit. I believe that this case certainly is one which is a circumstantial evidence case, but the circumstantial evidence is overwhelming, and it did, in fact, exclude every reasonable hypotheses of innocence, and the jury so found. I also believe that the amount of damage sustained was proven to be more than five hundred dollars and accordingly, the motion for post verdict judgment of acquittal shall be denied. The jury unanimously found Defendant guilty as charged. I agree with that verdict. I would state for the record that the jury didn't believe the testimony of Defendant, nor did I. But in any event, the motion for post-verdict judgment of acquittal is denied.
The significant factual testimony of the witnesses at trial was as follows:
1. An individual in a dark shirt was observed climbing the girders of the bridge and throwing "shiny" objects from the bridge.
2. The individual was then seen climbing down from the girders and walking toward the Bossier City side of the bridge.
3. No other individuals were seen on the bridge in and around the time the incident took place.
4. At approximately 5:40 a.m., within 1½ minutes of receiving a call that "a white male with dark hair, long sleeved either black, either long sleeved shirt or jacket" was seen "breaking off the neon light bulbs and throwing them at a car" from *722 the Texas Street bridge, Officer Curtis arrived at the scene.
5. Officer Curtis drove approximately half-way to three quarters of the way across the bridge when he found Defendant, a white male wearing a black sweat shirt.
6. Officer Curtis noted that Defendant's clothing was covered with a gray residue that matched the color of the girders on the bridge. Additionally, there were fragments of glass on Defendant's clothing.
7. Seven neon bulbs were replaced at a cost of $280, with additional cost for the hardware that holds the lights in place, and $520 for installation, making the total repair cost of $844.53.
Other than Defendant claiming he was in the wrong place at the wrong time, the defense offered no evidence of a reasonable alternative hypothesis of who may have committed this crime. For example, the defense did not offer any evidence that there was someone else on the bridge as Defendant first began walking across it from the Shreveport side or at anytime thereafter. Defendant did testify that the material on his clothing was pool cue chalk or dust from his work that day. The jury, however, obviously rejected Defendant's testimony as not credible. We find that the testimony presented by the State regarding the absence of other individuals on the bridge at the time, the appearance of the police on the scene within about a minute and a half after receiving the call, the fact that Defendant was wearing a dark shirt as described by Mr. Gillespie and the presence of gray residue and glass on his clothing negates any reasonable probability of misidentification.
Regarding Defendant's argument that there was insufficient evidence to establish that the property damage was in excess of $500, we find that the testimony of Ms. Wilemon, coupled with the invoice documenting the labor and materials used in repairing the broken lights, is sufficient to support the jury's finding that the damage exceeded the statutory amount. Moreover, we note that the defense failed to offer any evidence to rebut the testimony as to how many bulbs were broken or as to the value of the damage.
In light of the above stated facts and law, it is clear that sufficient evidence was presented at trial for a rational trier of fact to conclude, beyond a reasonable doubt, that Defendant committed the crime of simple criminal damage to property in excess of $500. Accordingly, Defendant's conviction is affirmed.

Illegal sentence
Defendant's second assignment of error challenges the portion of his sentence which imposed a mandatory jail term in default of payment of the $500 fine and court costs. Defendant further contends that the trial court erred in requiring payment of restitution as a condition of probation. Since we find merit in Defendant's argument on this issue, we must remand the matter to the trial court for resentencing.
An indigent person may not be subjected to default jail time for failure to pay a fine, cost or restitution that are part of his sentence. State v. Hughes, 587 So.2d 31 (La.App.2d Cir.1991), writ denied, 590 So.2d 1197 (La.1992). In State v. Jones, 588 So.2d 805 (La.App. 2d Cir. 1991), this court addressed this very issue:
Defendant also alleges that the sentence imposed was illegal because he is indigent and the sentence imposes a mandatory jail term in the event of default of payment of the fine imposed. He argues that because he was indigent at the time of trial, as is illustrated by the fact that he was appointed counsel from the Indigent Defender's Office, it can be urged that this portion of the sentence be vacated.
The Jones court noted two then recent Louisiana Supreme Court decisions which held that an "indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence." See *723 State ex rel. Morales v. Court of Appeal Third Circuit, 575 So.2d 1389 (La.1991) and State v. Monson, 576 So.2d 517 (La. 1991). In adhering to these two supreme court decisions, this court, in Jones, declined to follow its previous decisions on the issue, and remanded the case to the trial court for resentencing.
In the instant case, the trial court determined Defendant to be indigent when it appointed counsel from the Indigent Defender's Office to represent him at the preliminary examination. He is represented on this appeal by appointed counsel from the Louisiana Appellate Project. Accordingly, as an indigent defendant, Defendant's sentence must be amended to delete those portions of the sentence which impose jail time in default of payment of the fine and costs, and which revoke probation thereby imposing jail time for failure to make restitution.

CONCLUSION
For the foregoing reasons, Defendant's conviction is affirmed and the matter is remanded to the trial court for resentencing in accordance with this opinion.
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING.
PEATROSS, J., Per Curiam.
Defendant appealed his conviction and sentence arguing that, as an indigent defendant, he could not legally be sentenced to jail time in default of payment of a fine. A panel of this court agreed and remanded the case to the trial court to first determine Defendant's ability to pay the fine prior to resentencing in accordance with State ex rel. Armstead v. State, 589 So.2d 1050 (La.1991) and State v. Monson, 576 So.2d 517 (La.1991). The supreme court, in Armstead, stated in pertinent part:
Insofar as the claim of illegal sentence is presented in the application, it is transferred to the district court for a determination of relator's indigency. If Armstead is found to be indigent, the trial court is ordered to delete only that portion of his sentence which provides for a jail term in the event of default of payment of the fine. An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). However, we note that La. C.Cr.P. art. 886 permits the state to enforce collection of the amount owed in the same manner as a money judgment in a civil case. State v. Conley, 570 So.2d 1161 (La.1990).
While Defendant in the instant case was determined to be indigent for purposes of representation by appointed counsel, such determination does not necessarily mean that Defendant is unable to pay the fine imposed, or a portion thereof. The trial court is, therefore, instructed to conduct a hearing, prior to resentencing Defendant, to determine his ability to pay. If Defendant is found able to pay the fine imposed, the original sentence should be reinstated.