763 So.2d 618 (1999)
STATE of Louisiana, Appellee,
v.
Charles L. COLLINS, Appellant.
No. 32,409-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
Opinion Granting Rehearing December 8, 1999.
*621 Wilson Rambo, Monroe, Joseph W. Hendrix, Shreveport, Diane L. Foster, New Orleans, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Brian L. King, Asst. Dist. Attys., Counsel for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
WILLIAMS, Judge.
The defendant, Charles Collins, was charged by bill of information with indecent behavior with a juvenile, a violation of LSA-R.S. 14:81. Having waived his right to a jury trial, a bench trial was held and the defendant was found guilty as charged. The trial court sentenced the defendant to serve three and one-half years at hard labor and ordered him to pay a fine of $1,000, in addition to court costs, or to serve six months default jail time. Pursuant to LSA-R.S. 15:537, the trial court denied the defendant's eligibility for diminution of sentence based on good behavior.
The defendant filed a motion to reconsider sentence on the ground that the sentence was excessive. He also filed a motion for post-verdict judgment of acquittal. Although the trial court modified the defendant's sentence and removed the defendant's ineligibility for diminution of his sentence for "good time," the defendant's motion for post-verdict judgment of acquittal and motion to reconsider sentence were denied. The defendant appeals. For the following reasons, we amend the sentence to delete the fine and default time and affirm the defendant's conviction and sentence.

FACTS AND PROCEDURAL HISTORY
On April 7, 1996, twelve-year-old L.J. was visiting the defendant's home which was next door to her home in a Caddo Parish apartment complex. L.J. and the defendant's stepdaughter, S.H., were friends.
According to L.J., she and S.H. were watching television in the bedroom when they fell asleep on the bed. The victim testified that she was alone in the room when the defendant entered and attempted to remove her shorts and underwear and began to fondle her. L.J. testified that the defendant licked her behind her ears and on her chest. She testified that he blocked her access to the door when she attempted to leave the bedroom. L.J. further testified that the defendant offered her money as she left the apartment and he said, "Please don't hurt me."
The defendant testified that L.J. was at his apartment visiting S.H. on the day of the incident. According to the defendant, he and his wife were in the apartment during the time the girls were watching television. The defendant testified that, shortly thereafter, he went outside to play basketball. While he was playing, his wife and L.J.'s mother came out of the apartment. His wife informed him that they were going to the casino, and she would call him if she won any money. The defendant testified that he went inside to retrieve the telephone and encountered L.J. lying in his stepdaughter's bed. According to the defendant, when he told her to go outside and play with the other children, she became angry and pushed him as she *622 stormed out. The defendant testified that this was the extent of his contact with L.J.
Forensic evidence was gathered and a DNA analysis was performed using this evidence. The evidence included breast swabs/bite mark swabs from L.J. and saliva samples taken from the defendant. The DNA analysis revealed that the genetic markers from the evidence taken from L.J. matched those found in evidence taken from the defendant.
After a bench trial, the trial judge found the defendant guilty of indecent behavior with a juvenile and sentenced him to serve three and one-half years at hard labor. Defendant was also fined $1,000 plus costs or six months default jail time. The defendant appeals.

DISCUSSION

Assignments of Error Nos. 1 & 6
By these assignments, the defendant contends the evidence was insufficient to sustain a conviction and the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, the defendant argues that the victim's statement to police officers following the incident and her testimony at trial were so inconsistent as to render her testimony unreliable.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5 § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to the trier-of-fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333, State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (1987). Moreover, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
In order to convict a defendant of indecent behavior with a juvenile, the state must prove that the defendant: (1) committed any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen; (2) was over the age of seventeen and more than two years older than the victim; and (3) had the intention of arousing or gratifying the sexual desires of either person. LSA-R.S. 14:81; State v. Free, 26,267 (La.App.2d Cir.9/21/94), 643 So.2d 767, writ denied, 94-2846 (La.3/10/95), 650 So.2d 1175.
Here, the defendant does not argue that the state failed to prove any specific element beyond a reasonable doubt. *623 Rather, the defendant argues that the evidence presented to support his conviction was based on the unreliable and inconsistent testimony of the victim.
In determining the defendant's guilt, the trial court relied on testimony of the witnesses and the results of the DNA testing. The trial court accepted the victim's testimony and concluded that she was a credible witness. The trial court also noted that the statements made by the defendant prior to trial were inconsistent with his incourt testimony. Finally, the trial court found that the testimony regarding the DNA testing was extremely compelling.
Upon reviewing the evidence in the light most favorable to the prosecution, the evidence against the defendant is sufficient to prove the elements of the offense charged. Moreover, there exists no internal contradiction or irreconcilable conflict between the testimony of the victim and the physical DNA evidence. Thus, the victim's testimony, which was believed by the trial court, was sufficient to support the guilty verdict. These assignments of error lack merit.

Assignment of Error No. 2
In this assignment, the defendant contends the trial court erred in denying his motion in limine to exclude the DNA evidence. The defendant argues that the trial court erred in allowing the use of DNA evidence because of its unreliability and that the trial court erred in qualifying Connie Brown as an expert in the field of DNA analysis and forensic serology.
This issue of DNA reliability was addressed by this court recently in State v. Brown, 31,123 (La.App.2d Cir.9/23/98), 719 So.2d 146, which determined as follows:
The results of DNA and RFLP analysis are generally admissible in Louisiana so long as the trial court's gatekeeping function has been performed in accordance with the Daubert/Foret test. State v. Quatrevingt, 93-1644 (La.02/28/96), 670 So.2d 197, cert. denied, 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996). The reliability of scientific evidence is to be ensured by the requirement that there be a valid scientific connection to the pertinent inquiry. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993). This connection is to be examined in light of a preliminary assessment by the trial court of whether the reasoning and methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology can be applied to the facts at issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., supra; State v. Foret, supra. In considering whether scientific evidence is reliable, the trial court should consider the following factors suggested in Daubert: (1) the testability of the expert's theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and (4) whether the methodology is generally accepted in the scientific community. State v. Quatrevingt, supra; Daubert v. Merrell Dow Pharmaceuticals, Inc., supra.

719 So.2d at 149-50.
In his motion in limine, the defendant argued that the DNA evidence was inadmissible because the procedure used by the North Louisiana Criminalistics Laboratory in analyzing the samples caused the evidence to be unreliable and prejudicial. Although the defendant maintains this claim in this assignment of error, he further argues that the DNA evidence was unreliable because Brown referred to the defendant's "blood sample" when the sample that was taken from the defendant was actually a swab of saliva taken from his jaw.
Although Brown referred to the "reference blood sample" taken from the defendant when actually the sample taken was a saliva sample from his jaw, she later referred to the "reference oral swab" from the defendant as the one that *624 matched the swabs taken from the victim. Moreover, the defendant's argument that Brown erroneously referred to the defendant's "blood sample" was not originally the basis for his claim that the DNA testing was unreliable. Initially, the defendant argued that the DNA evidence was unreliable because of questionable labeling of the samples and because of the testing procedure itself. In any event, the defendant offered no evidence to support a finding that the testing performed by Brown deviated from the standard practice or was in any way unreliable. Thus, this argument lacks merit.
The defendant also argues that neither Brown's education nor her work background serve to qualify her as an expert in the field of DNA analysis and forensic serology. Moreover, the defendant argues that Brown held no specialized license or certification in the fields for which she was qualified.
A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and this judgment will not be disturbed by an appellate court unless it is clearly erroneous. State v. Baker, 31,162 (La.App.2d Cir.10/28/98), 720 So.2d 767. If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise. State v. Baker, supra.
Brown testified that she was a forensic scientist at the North Louisiana Criminalistics Laboratory, where she had been employed since May 1997. She had been employed for three years in the private sector for a laboratory which performed forensic science testing for criminal laboratories that were not equipped to perform their own testing. According to Brown, her primary responsibility was conducting DNA testing on items of evidence containing biological fluids. Brown testified that she has a Bachelor of Science degree in applied biology from Georgia Tech and a Master of Science degree in forensic science from the University of Alabama. Finally, she had been qualified as an expert witness in the fields of forensic DNA analysis and molecular biology in the Caddo Parish and Rapides Parish courts.
Noting her significant background in science, the trial court determined that Brown was qualified in terms of her formal education to give testimony as an expert in the fields of DNA analysis and forensic serology. The trial court also noted Brown's on-the-job training and work experience. After reviewing this record, we conclude that the trial court's determination that Connie Brown is an expert in the fields of DNA analysis and forensic serology was not clearly erroneous.
This assignment of error is without merit.

Assignments of Error Nos. 3,4,5,7 & 8
These five assignments address the issue of the sentence imposed by the trial court. As previously stated, upon finding the defendant guilty of indecent behavior with a juvenile, the trial court sentenced him to serve three and one-half years at hard labor. The defendant argues that the sentence imposed was unconstitutionally excessive and considering the numerous mitigating factors, an abuse of judicial discretion. Moreover, the defendant argues that the trial court failed to adhere to the sentencing guidelines provided by LSA-C.Cr.P. art. 894.1. Finally, the defendant claims that the trial court erred in not requesting a pre-sentence investigation (PSI) report prior to sentencing.
In reviewing claims of excessive sentence, an appellate court uses a two-prong test. First, the record must reflect adequate consideration of the criteria set forth in LSA-C.Cr.P. art. 894.1. State v. Smith, 433 So.2d 688 (La.1983). The trial court is not required to list every aggravating and mitigating circumstance *625 so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, supra; State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for the sentence is the goal of LSC.Cr.P. art. 894.1, not a rigid or mechanical compliance with its provisions. Remand is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos, 419 So.2d 475 (La.1982). The sentencing record should reflect that the trial judge considered not only the seriousness of the crime and the past criminal history of the defendant, but also the defendant's personal history (including age, mental status, dependants, family ties, employment record, and health) and the potential for rehabilitation. State v. Quebedeaux, 424 So.2d 1009 (La.1982); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
The second prong of the inquiry requires an examination of the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1 § 20 if it is considered grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Barnes, 28,835 (La. App.2d Cir.12/11/96), 685 So.2d 1148, writ denied, 97-0274 (La.10/10/97), 703 So.2d 602. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Absent a showing of manifest abuse of discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345. Moreover, there is no requirement that specific matters be given any particular weight when considering a proper sentence for a defendant. State v. Berry, 29,945 (La.App.2d Cir.10/29/97), 702 So.2d 33.
There is no mandate under our law that the trial court order a PSI. State v. Peterson, 96-1663 (La.App. 3d Cir.6/4/97), 696 So.2d 211, writ denied, 97-1742 (La.11/26/97), 703 So.2d 644. Such an investigation is an aid to the court and not a right of the accused. The trial court's failure to order a PSI will not be reversed absent an abuse of discretion. State v. Wimberly, 618 So.2d 908 (La.App. 1st Cir.), writ denied, 624 So.2d 1229 (1993).
The record reflects that the trial court held a pre-sentencing hearing and allowed several individuals to address the court on behalf of the defendant. The trial judge noted that he had received several letters on the defendant's behalf. In sentencing the defendant, the trial court expressed concern about the defendant's illness and disability, and the fact that the defendant had been laid off from work. The trial court also took into consideration the defendant's wife and her illness. However, as one of several aggravating factors, the trial court noted that the facts could possibly justify a more serious offense of attempted simple rape or possibly some other higher grade felony offense. The trial court also noted that there had been some inappropriate conduct in the form of harassment toward L.J. and her family.
The trial court adequately considered the required factors under LSC.Cr.P. art. 894.1. The lack of a PSI in this instance was not an abuse of discretion by the trial court and did not prejudice the defendant. The sentence imposed, which is half of the maximum sentence allowed, is not unconstitutionally excessive. The defendant was a family friend and neighbor of the victim. He violated the trust and responsibility he had toward the victim for his own interest and he never regarded the lifelong damage such action might cause the defendant. These assignments of error are without merit.

Error Patent
In addition to the sentence of three and one-half years imposed on the defendant, *626 the trial court fined the defendant $1,000 plus court costs, or in default thereof, an additional six months in jail, to run consecutively.
During the defendant's trial, he was represented by the indigent defender board. An indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991). Therefore, we hereby delete the portion of the defendant's sentence providing for a fine. State v. Jonas, 29,750 (La.App.2d Cir.8/20/97), 698 So.2d 744; State v. LeBeau, 621 So.2d 26 (La.App. 2d Cir.), writ denied, 629 So.2d 359 (La.1993).

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. The defendant's sentence is amended to delete the fine and default time, and as amended, the sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED.
Before WILLIAMS, GASKINS, CARAWAY, PEATROSS & DREW, JJ.

ON REHEARING
PEATROSS, J.
We granted the State's application for rehearing in this case to review the trial court's imposition on Defendant of default jail time in lieu of payment of a fine and court costs. A panel of this court affirmed Defendant's conviction and sentence, with the exception of the fine and default time, which this court deleted from Defendant's sentence. State v. Collins, 32,409 (La. App.2d. Cir.9/22/99), 763 So.2d 618. For the reasons stated herein, we reverse our prior decision deleting the default jail time from Defendant's sentence and remand the case to the trial court for a determination of Defendant's inability to pay the fine and costs imposed.
We begin with the mandatory requirement of La.C.Cr. P. art. 884, which provides as follows:
If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year[.] (Emphasis added.)
It is, however, a well-settled premise that an indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).
Regarding the determination of indigency for the purpose of payment of a fine or costs, our supreme court has held that the necessity of appointing counsel from the Office of the Public Defender to represent a defendant in criminal proceedings establishes the defendant's indigency not only for representation purposes, but also for inability to pay a fine. State v. Williams, 288 So.2d 319 (La.1974); See also State v. Anderson, 95-1688 (La.App.2d Cir.5/8/96), 677 So.2d 480. There are, however, several cases in which, despite a prior determination of indigency for purposes of representation, the supreme court and courts of appeal have remanded to the trial court for a determination of a defendant's indigency insofar as the defendant's ability to pay the fine and court costs. State ex rel. Armstead v. State, 589 So.2d 1050 (La. 1991); State v. Monson, 576 So.2d 517 (La.1991); State v. Roberts, 600 So.2d 596 (La.1992); State v. Moreau, 31,879 (La. App.2d Cir.3/31/99), 735 So.2d 717; State v. Jones, 588 So.2d 805 (La.App. 2d Cir. 1991) (wherein this circuit expressly declined to follow State v. Lewis, 506 So.2d 562 (La.App. 2d Cir.1987), and State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989), which are previous decisions of this court which held to the contrary); State v. Morales, 575 So.2d 1389 (La.App. 3d Cir.), writ denied, 589 So.2d 490 (La.1991). This issue has also been addressed in Devlin, La. *627 Const. Law, 48 La. Law Rev. 335 (1987), which reads in pertinent part:
The final set of open issues is essentially procedural; whether inability to pay costs or fines should be presumed from the fact that a defendant qualifies for appointed counsel or whether a separate hearing should be held to determine the ability and efforts of the defendant to pay. Here, too, the second circuit's willingness to engage in case by case determination seems justified. The number of cases and consequent burden on the court would not appear to be great. And the correlation between qualification for appointed counsel and inability to pay costs or fines ... is scarcely exact. Such a presumption can be both underinclusive, missing those who exhaust their resources on private counsel and overinclusive, exempting defendants who, though poor enough to qualify for a public defender, nevertheless have the resources to pay reasonable costs or a moderate fine. Equity and avoidance of arbitrary sentencing require no less.
While we decline to create the requirement of a mandatory hearing, prior to sentencing, on a defendant's indigency regarding ability to pay a fine or costs in every case, we acknowledge that there are cases in which, for a variety of reasons, a defendant may be found to be indigent for representation purposes, but may be able to pay a reasonable fine and costs. For example, in the recent case of State v. Moreau, supra, this court was faced with a situation in which the trial court imposed a fine in the amount of $500 and, in default thereof, 90 days in jail. In that case, the record indicated that the defendant, while represented by the IDB, had sufficient funds to frequent nightclubs and was gainfully employed at the time of his arrest. Under the circumstances in Moreau, we believed that a determination by the trial court as to whether the defendant was or was not, in fact, unable to pay such a fine, was warranted; and, therefore, on rehearing, we remanded the matter to the trial court stating:
While Defendant in the instant case was determined to be indigent for purposes of representation by appointed counsel, such determination does not necessarily mean that Defendant is unable to pay the fine imposed, or a portion thereof. The trial court is, therefore, instructed to conduct a hearing, prior to resentencing Defendant, to determine his ability to pay. If Defendant is found able to pay the fine imposed, the original sentence should be reinstated.
Likewise, in the case sub judice, the record indicates that, while Defendant was represented by appointed counsel at trial and initially by the Louisiana Appellate Project ("LAP") on appeal, after the appeal was lodged, Defendant retained private counsel.[1] Faced with the knowledge that Defendant was able to gather sufficient resources to retain an attorney, we are constrained to find that a hearing is necessary to determine if Defendant is actually unable to pay the fine and costs imposed before automatically deleting the default jail time from his sentence. We would be remiss if we did not recognize that, in situations in which there are facts which indicate that a defendant may, in fact, have adequate resources to pay a reasonable fine and costs, a second inquiry into the defendant's financial status is warranted.
The State argues that a determination of indigency for purposes of inability to pay a fine and costs is premature because Defendant has not yet been called upon to pay the fine and, therefore, has not yet defaulted. We disagree. Generally, when a fine is imposed, it is payable immediately. La.C.Cr. P. art. 888. While *628 we recognize that, as a practical matter, such fines and costs are often paid over time, through the inmate banking system while a defendant is incarcerated, we decline to hold that a determination of indigency should be deferred until a defendant is on the verge of being released from jail, or is actually facing immediate incarceration for default of payment of the fine and costs.[2] Following the supreme court's decisions in State ex rel. Armstead, supra, and State v. Monson, supra, we reverse our prior decision in this case deleting the default time from Defendant's sentence and remand for a hearing to determine whether Defendant is actually unable to pay the fine and costs imposed. Should the trial court find that Defendant is able to pay the fine and costs, Defendant's original sentence shall be reinstated. If, however, the trial court determines that Defendant is unable to pay the fine and costs, that portion of Defendant's sentence that imposes default jail time in lieu of payment shall be deleted. We note, however, that La.C.Cr. P. art. 886 permits the State to enforce collection of the amount owed in the same manner as a money judgment in a civil case. State v. Monson, supra. State v. Conley, 570 So.2d 1161 (La.1990).
REVERSED AS TO DELETION OF DEFAULT TIME IN SENTENCE AND REMANDED FOR A DETERMINATION OF INDIGENCY.
GASKINS, J., concurs with reasons.
WILLIAMS, J., dissents. This court's original opinion is correct. Under the facts of this case, a remand for an indigency hearing is unnecessary.
DREW, J., dissents for reasons assigned by WILLIAMS, J.
GASKINS, J., concurring.
I respectfully concur with the majority that the default time for defendant's failure to pay a fine should not automatically be deleted. Instead of ordering that a hearing to determine indigency be held at the time of the imposition of the fine, however, I would order that the hearing be held prior to the defendant being remanded to jail to serve his default time.
NOTES
[1] In March 1999, the LAP, through attorney Wilson Rambo, filed assignments of error and a brief with this court on behalf of Defendant. On March 15, 1999, however, Joseph William Hendrix filed a motion to enroll as counsel for Defendant. Mr. Hendrix then filed a brief on behalf of Defendant and requested that it be the original brief on appeal.
[2] In its brief on rehearing, the State cites the recent supreme court case of State v. Canterberry, 99-2201 (La.7/27/99), 747 So.2d 37. Canterberry involved the revocation of the defendant's probation, and subsequent incarceration, for failure to pay restitution and fees. The supreme court granted the defendant's writ and remanded the matter to the district court for a hearing on whether the defendant willfully refused to pay or consideration of whether alternative forms of punishment would be adequate to satisfy the State's interest in punishment and deterrence. Canterberry did not involve the issue of determination of indigency for purposes of inability to pay a fine and costs imposed as part of the defendant's sentence. We find, therefore, that Canterberry has limited, if any, application to the instant case.