976 So.2d 287 (2008)
STATE of Louisiana, Appellee
v.
Andrea C. ALEXANDER, Appellant.
No. 42,957-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*289 Louisiana Appellate Project by Paula C. Marx, for Appellant.
Jerry L. Jones, District Attorney, Robert N. Anderson, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, J.
The defendant, Andrea C. Alexander, pled guilty to aggravated criminal damage to property, a violation of La. R.S. 14:55, and received a sentence of 10 years at hard labor with credit for time served. The defendant now appeals. Because the record does not show an adequate factual basis for the sentence, we vacate the sentence and remand for resentencing.

FACTS
On March 15, 2007, Alexander was charged by bill of information with aggravated criminal damage to property. The bill asserted that on or about January 5, 2007, Alexander committed aggravated criminal damage to a 2004 Chevrolet Trailblazer occupied by Brandon Singleton and Bernard Jackson. Alexander, who was 17 and had been in jail for six months, pled guilty as charged on June 12, 2007.
At the beginning of the guilty plea hearing, the assistant district attorney reminded the trial court of the basic facts, namely, that shots were fired and hit a car. After the defendant was sworn in, he explained that he had dropped out of school in the tenth grade and was supposed to start GED school, but had "got locked up." He indicated that he worked on cars with his stepfather. When asked if he had ever been "detained in a juvenile court proceeding, anything like that," he responded, "One. One time." However, he claimed that he was not on juvenile probation.
Rather than follow the usual guilty plea procedure of asking the district attorney to set forth the facts, having the defendant confirm the facts, and having the defendant waive his Boykin rights, the court began questioning Alexander about the crime and the other individuals involved. Referring to the officer's affidavit of probable cause to arrest without a warrant, which was not entered into evidence, the trial judge noted that the boxes indicating criminal history and probation/parole were marked "Yes." The trial judge recognized that this information could be incorrect but stated that it suggested to him that the defendant had a number of prior arrests. The defendant denied this and stated that he was no longer on juvenile probation.
When the trial judge asked what happened in this case, Alexander explained that the week before the incident at issue Singleton and Jackson had shot at him at a Shell station and had hit his friend in the leg. As he came out of the store on the night of the incident at issue, he recognized Singleton and Jackson. Alexander grabbed a gun and fired shots at the trunk of the car in which Singleton and Jackson were riding. The court then asked what he was trying to hit, and Alexander responded, *290 "Nothing really. I don't know." He went on to explain that it was "a gang bang thing." Apparently, Alexander belonged to one of two rival groups. Alexander denied that other people were around when he fired the gun.
The court then asked Alexander's mother why he was not in school. She replied that he was too old. She also said he was put on a waiting list to go to the alternative school in West Monroe, but she had never been contacted about it. During the hearing, the trial court observed that Alexander "might have been a troublemaker at school" and that his mother did not appear to be able to control him. His mother denied that he was a troublemaker, noting that he had played football. She also denied being unable to control him. She explained that she had just gotten out of the hospital on the night of the incident and was home sick in bed. She also told the trial court that Alexander was next to the youngest of her four children.
After confirming with Alexander that he could read and write, the court asked him if he knew the charge against him. Alexander replied, "aggravated criminal damage to property." The court noted that it looked like he had been booked on attempted second degree murder. However, the assistant district attorney admitted that Alexander was never charged with that crime. The trial court then, in a rather rambling fashion, went over the Boykin rights. Alexander indicated that he understood. The court confirmed that the sentencing range was from one to fifteen years, with or without hard labor and then pronounced the defendant guilty.
After additional discussions about the prior incident, the trial court concluded that Alexander had to go to prison and the only issue to be decided was for how long. The court stated:
I'm not required by law to order a presentence investigation. My thinking on this is  well, we just can't have that, people shooting . . . I figure you're going to do it again. The worst I can do is lock you up for 15 years. Probably you'll get out and commit other felony offenses.
Alexander's counsel, who had not yet spoken, asked if the court would consider putting Alexander on probation, ordering him to get a GED, and giving him a chance to straighten up. The court declined, stating, "I don't want to. I mean, I really don't. I mean why shouldn't I send you to prison? I don't think you really care all that much right now, do you? You're in the mood?" Alexander replied, "Sir?" The court then asked the mother what good it would do to order Alexander to get his GED. She asked the court to send him to an alternative school to get his GED. But the court then stated:
No. That's for people who want to learn. I don't think he wants to. That's my opinion. I mean, I don't know him. Let me look at the sentencing guidelines here. Let me see if I have any justification to send him to prison. That's just my  I just think there's jokers going around shooting guns in public places whether it's 1:00 in the morning or 8:30 at night. Somebody needs to go to prison. And it looks like you're the one that's elected right now. Don't you agree?
Alexander responded, "No, sir." The court went on to note that Alexander could have shot anyone when he fired the gun and that he did not give "serious thought" to the consequences of his action.
The court then proceeded to address the factors of La. C.Cr.P. art. 894.1 to determine the sentence of imprisonment. The court stated:

*291 The law says, "Where the defendant has been convicted of a felony or a misdemeanor, the Court should impose a sentence of imprisonment if any of the following occurs. One, there is an undue risk that during the period of suspended sentence or probation the defendant will commit another crime." Do I have any information that leads me to believe that? I think that to be true. But I'm having a hard time articulating why I believe that to be true. I don't have any hard evidence. I have information that you had maybe some trouble as a juvenile. You dropped out of school some time ago. You can't tell me when. Your mother indicates to me that you're uncontrollable. You've been involved in two shooting incidents. What you told me is that you saw an individual and the only provocation that caused you to shoot him was an incident that occurred a week or two weeks before at the Shell station. Now, did I miss something here? Nobody shot at you at that Tanglewood station, did they? (Emphasis added.)
Alexander responded, "No, sir." The trial judge continued by addressing Alexander's need for correctional treatment or a custodial environment. The trial judge stated that he did not know what kind of correctional treatment was available in prison and observed that a custodial environment is basically a means of "warehousing" people. Next, the trial judge stated, "Firing a gun like it's Dodge City in a populated area at a commercial establishment where strangers and otherwise congregate there and carry on commerce is a serious offense." Although the trial judge mentioned that he had already concluded he would not impose a suspended sentence, he observed that while Alexander's conduct may not have manifested deliberate cruelty to a victim, it did show a callous indifference to the safety of others. The trial judge then stated:
I'm thinking about giving him ten years. But I have had individuals who were shot, cases where individuals were actually shot by the offender and they've received less sentence. Am I off here, Mr. Walker?
Alexander's counsel then responded, "Well, it does seem kind of harsh for a first time offense and nobody was injured." The trial judge then admitted, "I'm trying to articulate why this case offends me so much." But he then went on to say:
All right. I think I've already said it though. It's just somebody shooting out  I mean. This guy is involved in two shooting incidents, some stupid gang thing. Somebody needs to go to prison. Something needs to happen to somebody.
Alexander's counsel pointed out that Alexander had already done six months, and the assistant district attorney, in an apparent attempt to steer the court toward a lesser sentence, reminded the court:
I don't remember the name, but I had a case in front of Your Honor more than a year ago that was fairly similar to this. And if I recall, you gave the guy eight years and suspended all but, I think, two.
The trial judge did not remember the case, but he noted that there must have been something about that particular defendant that led to the result. With regard to Alexander, the trial court concluded
I just think this guy here, the guy standing before me, is not going to be anything but trouble in the future. That's what I'm thinking. He's got a concerned mother here, but she can't do anything for him. Sentenced to ten years at hard labor, custody of the Louisiana Department of Public Safety and Corrections. You are given credit for *292 any and all time previously served in connection with the commission of this offense. . . .
The trial judge then realized that the sentencing delay had not run and asked if defendant would waive it. Defense counsel asked if the court would impose a better sentence if they waited, but the court responded in the negative. Defense counsel then moved to vacate the sentence based on the statutory delay. The trial judge vacated the sentence and reset the matter for sentencing.
At the sentencing hearing, the trial judge articulated the lack of evidence indicating that Alexander understood the "enormity of his crime" or showing that he had any remorse as additional factors for imposing the same 10-year sentence.

DISCUSSION
On appeal, Alexander raises seven assignments of error all relating to the excessiveness of his sentence. He points out that he is a first offender who did not contemplate that his act would cause serious harm, that there is no showing that he would not benefit from probation, and that there is no showing that he poses an undue risk of committing another crime while on probation. He argues that the trial judge failed to adequately consider the mitigating factors in this case, including his youth, his lack of a prior criminal record, and the likelihood of rehabilitation. He also points out that the record does not support many of the "general assumptions" made by the court, particularly noting that his mother did not say that he was uncontrollable.
The state points out that the defendant was booked on the charge of attempted second degree murder, that he admitted the offense was gang related, and that his only explanation for shooting at the victims was they had shot at him a week before he reciprocated. Thus, this was the second shooting involving the defendant. For these reasons, the state argues that the plea to aggravated criminal damage to property does not adequately describe the defendant's conduct. Also, the state asserts that his conduct endangered the lives of not only his victims, but also innocent store patrons. Suggesting that the defendant obtained some sentencing benefit, the state notes that the maximum sentence for aggravated criminal damage to property is 15 years, and that the maximum for attempted second degree murder is 50 years without benefits. Finally, the state asserts that the trial court "thoroughly articulated" reasons under La. C. Cr. P. art. 894.1 for the sentence imposed.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Haley, 38,258 (La. App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d *293 728. However, there is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166.
A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Shirley, 41,608 (La. App. 2d Cir.12/13/06), 945 So.2d 267. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
A trial court is not required to render a suspended sentence or probation on a first felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. State v. Flores, 27,736 (La.App. 2d Cir.2/28/96), 669 So.2d 646.
Under the provisions of La. C. Cr. P. art. 894.1(A), when a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the following occurs:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
The article then goes on to list 33 grounds in Section B that shall be accorded great weight in the trial court's determination of suspension of sentence or probation. As previously noted, the trial judge found there was an undue risk of commission of another crime, but he admitted having a hard time articulating why that was true. The court also found that none of the grounds in Section B applied herein to warrant a suspended or probated sentence.
Alexander pled guilty to aggravated criminal damage to property, which is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion. La. R.S. 14:55. The crime is punishable by a fine of not more than ten thousand dollars, imprisonment with or without hard labor for not less than one nor more than fifteen years, or both. Id.
In State v. Ezernack, 408 So.2d 907 (La. 1981), the defendant was charged with aggravated criminal damage to property, pled guilty to attempt, and was sentenced to five years at hard labor. Testimony presented at the guilty plea hearing indicated that the offense caused extensive damage to the victim's truck and mobile home as a result of the discharge of three shotgun blasts. In imposing sentence, the *294 judge noted that the threat to human life posed by the blind discharge of a firearm into an occupied home was, in itself, sufficient to justify a significant term of imprisonment. However, the court felt that the defendant's first offender status warranted a sentence somewhat less that the maximum of seven and one-half years; thus, the sentence imposed was five years at hard labor.
In reviewing the sentence for excessiveness, the supreme court stated:
[T]he trial court's preoccupation with the seriousness of the offense caused it to neglect several important mitigating factors weighing in the defendant's favor. This Court has repeatedly cautioned that ". . . the sentencing court should indicate that it has considered not only circumstances militating for incarceration, but also any mitigating factors." State v. Franks.[,] 373 So.2d 1307, 1308 (La.1979). While the trial judge need not articulate every aggravating and mitigating circumstance under Article 894.1, State v. Guiden, 399 So.2d 194 (La.1981), the record left of sentencing should reflect that the trial court considered not only the seriousness of the offense and the past record of the accused, but also the defendant's personal history (age, mental status, dependents, family ties, employment record, emotional and physical health) and his ". . . potential for rehabilitation." State v. Molinet, 393 So.2d 721, 722 (La.1981); State v. Jones, 398 So.2d 1049 (La.1981); State v. Jackson, 360 So.2d 842 (La. 1978).
The court then noted that the 28-year-old defendant had been continuously employed since graduation from high school, that he had a wife and two young children, and that the PSI suggested the offense was induced by a combination of jealousy, intoxication, and emotional strain caused by a brief period of separation from his wife and family. While acknowledging that the circumstances hardly justified the defendant's conduct, the supreme court stated that the circumstances plainly suggested an improbability that it would be repeated, and that the defendant's prospects for rehabilitation were further underscored by his lack of a prior criminal record and his express willingness to compensate the victim for the damages to his property. Thus, the court stated that having failed to consider the defendant's background and character, the trial court's recitations were insufficient to constitute full compliance with Article 894.1, and that absent such compliance, the court lacked appropriate criteria by which to measure whether the sentence imposed was excessive. The court then affirmed the conviction, but vacated the sentence and remanded for resentencing.
In the instant case, Alexander is a first felony offender who had only recently turned 17 at the time of the offense. We glean that the defendant got into some trouble as juvenile, but nothing in the record suggests it was an offense involving violence. It does not appear that he was on juvenile probation at the time of the instant offense. From the record, we observe that Alexander has a family, which includes his mother, a stepfather, and three siblings. His employment history is not clear, but he stated that he worked on cars with his stepfather. Although he had dropped out of school, he stated that he was to enroll in a GED class before being "locked up." His mother denied that he had been a troublemaker at school or that he was uncontrollable. Other than the offense itself, which Alexander admitted was "a gang bang thing" precipitated by a recent incident in which the victims shot at him and a friend, there is simply nothing in this brief record to show that there is an *295 undue risk that this young offender will commit another crime during a period of a suspended sentence or probation.
It is clear that the record would contain more information about Alexander relevant to tailoring an appropriate sentence if the trial judge had ordered a pre-sentence investigation ("PSI") report. We recognize that La. C. Cr. P. art. 875 does not mandate a PSI, and that the failure of the trial court to order a PSI is not subject to reversal absent an abuse of discretion. See State v. Collins, 32,409 (La.App. 2d Cir.9/22/99), 763 So.2d 618. Nevertheless, in State v. Lockwood, 439 So.2d 394 (La. 1983), the supreme court has recognized the importance of the PSI investigation and report to both the defendant and the integrity of the judicial system. The court observed that the PSI must be fair and not based solely on impression or opinion; rather, it must be based on conclusions rationally derived from information based on identifiable sources.
Thus, while the lack of a PSI in this case does not alone provide a basis for vacating the sentence, the integrity of the judicial system requires that any sentence, whether based in part on a PSI or not, must not be based merely on unsupported impression or opinion, but on conclusions rationally derived from identifiable sources. When the conclusions of the trial court for sentencing purposes are based on mere impressions, opinions, or false factual conclusions, the failure to order a PSI bears relevance in concluding that there was not full compliance with Article 894.1. Absent a PSI or any identifiable basis for the sentencing court's observations, the reviewing court lacks the appropriate criteria by which to measure whether the sentence imposed was excessive.
From our review of the record, we find that the trial judge's observations and conclusions about Alexander were largely the result of personal opinion and unsupported impressions. For instance, the trial judge's conclusions that Alexander did not want to learn and that he was "not going to be anything but trouble in the future" are essentially impressions that were not rationally derived from facts before the court. The same is true of the statements that after being sent to prison, the defendant probably would "get out and commit other felony offenses," and that the court did not think the defendant really cared much whether he was sent to prison. The trial judge admitted he was having a hard time articulating why he believed that this first offender would commit another crime and admitted that the court had no hard evidence to that effect. We find that this same lack of "hard evidence" suggests that the factual information before the court would not support the conclusion that the 17-year-old defendant was in need of "correctional treatment" in the form of a 10-year hard labor sentence.
Moreover, we find that part of the trial judge's factual conclusions are not supported by the record. The trial judge found that the mother had indicated that the defendant was uncontrollable, but as previously noted, that is not an accurate statement. Furthermore, the trial judge indicated that the defendant was involved "in two shooting incidents." However, this characterization is less than accurate where the defendant was the victim in the first incident and his friend was actually shot in the leg by the victims of the instant offense.
When considering whether a lesser sentence would deprecate the seriousness of the offense, we agree with the trial court's conclusion that this is indeed a serious offense. Even though no one was injured, the potential for injury or loss of life appears to have been high, particularly with respect to the occupants of the vehicle at *296 which Alexander shot. Though the state argues that the crime of aggravated criminal damage to property does not adequately describe Alexander's conduct, he was not charged with a specific intent crime, such as attempted second degree murder. Rather, an element of aggravated criminal damage to property is simply the foreseeability that human life might be endangered. See La. R.S. 14:55. We note that the trial judge concluded that Alexander did not give serious thought to the consequences of his shooting at the vehicle.
This is a case where a 17-year-old impulsively shot at a vehicle leaving a parking lot, because the two occupants had shot at him a week or two before. The only damage was a broken taillight. The state surely realized that specific intent to kill would be hard to prove. We note that Alexander, who appears to be a first felony offender, pled guilty and received no benefit from a plea bargain. Thus, we find that the record does not support the conclusion that a sentence less than ten years at hard labor would deprecate the seriousness of the offense.
Finally, we note that the trial judge's additional considerations stated at the sentencing hearing, namely the defendant's lack of appreciation of the "enormity of his crime" and the lack of evidence of remorse, add little support for the sentence for two reasons. First, the record shows that the trial judge had already decided that Alexander had to go to prison before even considering Article 894.1. Second, the trial judge never asked Alexander at either of the two hearings if he had anything to say before he was sentenced. Nor did he have the opportunity to express any remorse or regret in a PSI interview. One would not expect a 17-year-old high school dropout to know he should speak up in court without being asked. Under these circumstances, we conclude that Alexander's failure to address his appreciation of his crime or his remorse does not justify the sentence given to him under the facts and circumstances of this case.

CONCLUSION
For the reasons set forth above, we find that the trial judge abused his sentencing discretion by relying on impressions and false factual conclusions in arriving at this harsh 10-year hard labor sentence for this 17-year-old first offender. As in Ezernack, supra, and because the trial court's unsupported recitations were insufficient to constitute compliance with Article 894.1, we find that there was no adequate factual basis for the sentence imposed. Accordingly, we affirm the conviction, but vacate the sentence and remand for resentencing.
CONVICTION AFFIRMED AND REMANDED FOR RESENTENCING.
CARAWAY, J., concurs with written reasons.
BROWN, C.J., dissents with written reasons.
CARAWAY, J., concurring.
I respectfully concur.
The confusion surrounding the trial court's pronouncements for sentencing in this case demonstrate an abuse of discretion in the trial court's election not to order a presentence investigation report. I concur in the remand for that reason alone. The ten-year sentence itself, which was not the maximum sentence for the charged offense, may ultimately be an appropriate sentence.
BROWN, Chief Judge, dissenting.
Although arrested for attempted second degree murder, defendant was charged with aggravated criminal damage *297 to property and pled guilty to that charge. The trial court reviewed the police report which is in the record and gave defendant the opportunity to respond and explain his actions. The trial court addressed defendant's mother concerning defendant's family, schooling and work history. The trial court obtained a family and personal history as well as defendant's version of the crime. In specific detail, the trial court addressed and weighed the factors listed in La. C. Cr. P. art. 894.1 in explaining and imposing its sentence. Although I favor a PSI, I cannot say in this case that the failure to obtain a PSI was an abuse of discretion.
As stated by defendant, his actions were part of the continuing violence between gangs from the east side of Highway 165 and Tanglewood. This shooting occurred when two gang members from the east side came to Tanglewood (defendant's turf), and the previous shooting occurred when defendant and members of his gang went to the east side. The impression expressed in the (majority) opinion that, "[T]his is a case where a 17-year-old impulsively shot at a vehicle leaving a parking lot, because the two occupants had shot at him a week or two before," is flawed. It was not an aberrant occurrence but a continuing course of criminal behavior between rival gangs.
The trial court noted:
Firing a gun like it's Dodge City in a populated area at a commercial establishment where strangers and (others) congregate there and carry on commerce is a serious offense . . . it was just a callous indifference to the safety of others.
The trial court made judgments and formed impressions in sentencing this defendant in the same manner that these determinations are made in most cases, taking into account such factors as, the likeliness of continued criminal behavior, etc.
The 1981 case cited in the (majority) opinion, State v. Ezernack, involved marital separation, jealousy and intoxication; it did not involve ongoing gang violence and is unrepresentative of current cases.
I cannot say that the trial court abused its sentencing discretion. I respectfully dissent and would affirm.