781 So.2d 1268 (2001)
STATE of Louisiana, Appellee,
v.
Thomas L. FURGERSON, Appellant.
No. 34,344-KA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2001.
Rehearing Denied March 29, 2001.
*1272 John M. Lawrence, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Michael Wayne Powell, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, GASKINS and CARAWAY, JJ.
NORRIS, Chief Judge.
The defendant, Thomas L. Furgerson, was convicted by a jury of possession of cocaine, a Schedule II controlled dangerous substance, a violation of La.R.S. 40:967 F(1)(b). The trial court sentenced Furgerson to serve 30 years at hard labor, without benefit of parole, probation, or suspension of sentence, and to pay a fine of $100,000.00 or, in default thereof, serve 1000 days in the parish jail, with credit for time served. For the reasons expressed herein, we affirm.

Factual Background
On January 22, 1997, Shreveport PD undercover agents Russell Sarpy and Jean P. Gallion, assigned to the DEA Task Force, initiated and made contact by phone with Alvin Furgerson, a known drug dealer and the defendant's brother, to buy *1273 nine ounces of cocaine for $6,000.00. The deal was set for 9:00 p.m. that night at a car wash in the 6700 block of Linwood Avenue in Shreveport. At approximately 9:00 p.m., Sarpy and Gallion arrived at the car wash to wait for the delivery. Across the street, in an undercover van, a DEA surveillance team videotaped the car wash parking lot. After waiting some time for the cocaine to arrive, Sarpy called the same phone number that he had called earlier that day to set up the drug deal and was told that another person would be delivering the drugs. Approximately 20 minutes later, Sarpy received a page from a woman who informed him that a person named "Chucky" was en route to deliver the drugs, and would be there in about 20 minutes in a green vehicle. Sarpy and Gallion then left the car wash and waited approximately one mile away for the surveillance team to notify them when the green car arrived.
Shortly thereafter, the surveillance team informed them that a green Nissan Altima containing three black males had arrived. The surveillance team noted that the man riding in the passenger seat got out, placed a white package in a nearby trash can, and was back in the car, waiting with the driver and a third man who was in the back-seat. Sarpy and Gallion then returned to the car wash and stopped five to seven feet from the green car, which was backed into one of the car wash stalls. At trial, Sarpy testified that the car lot "was lit up decent" and he got a good look at the driver, noting that he had a gold tooth and a teardrop tattoo under his right eye. The driver asked Sarpy whether he had the money, and then nodded his head towards the trash can and indicated that the drugs were in the can. Sarpy then advised him that he wanted to check the drugs first; at that time, the man sitting in the back-seat leaned forward and said something to the driver and the driver then told Sarpy, "hey, ain't nothing happening"street slang indicating that the deal was off because the drug dealers were uncomfortable with the situation. Sarpy and Gallion then left the car wash and instructed the surveillance team to arrest the drug dealers once they retrieved the drugs from the trash can.
The passenger of the green car, who was later identified as Rickey D. Clark, went to retrieve the drugs from the trash can, which prompted the surveillance team to move in. Once the surveillance team moved in, the green Nissan sped away, leaving Clark behind. Sarpy saw Clark running across Linwood Avenue with a white object in his hand. Several officers from the surveillance van pursued Clark. Sarpy and Gallion pursued the green car in a high speed chase, but eventually abandoned their pursuit once they determined that it had gotten too far away. Meanwhile, the other officers found Clark hiding under a house a block from the car wash. Upon conducting a canvass of the nearby area, the officers discovered a bag of cocaine and a flannel shirt under another nearby house along the path that Clark had run. The officers identified the flannel shirt as the shirt Clark was wearing when he retrieved the drugs from the trash can and fled from the police. Agent Sarpy also identified Clark as the same man he had seen in the passenger seat of the green Nissan. The next day, a fingerprint expert found prints on the white bag matching Clark's, but there were no matches to defendant Furgerson. The contents of the bag were later confirmed by the crime lab to be 252.41 grams of pure, uncut powder cocaine.
Within 24 hours, agents Sarpy and Gallion, through mug shots at the SPD, identified the driver of the green Nissan as the defendant, Thomas L. Furgerson, aka "Chucky." Agent Sarpy then obtained a *1274 warrant to arrest Furgerson; he was subsequently taken into custody at a traffic stop.
On March 25, 1999, Furgerson was tried together with Clark. Both were found guilty of possession of 200 grams or more, but less than 400 grams, of cocaine, a Schedule II controlled dangerous substance. On March 2, 2000, Furgerson was sentenced to serve 30 years at hard labor, without benefit of parole, probation, or suspension of sentence, and to pay a fine of $100,000.00 or, in default thereof, serve 1000 days in the parish jail, credit for time served.[1] This appeal followed.

Discussion
On appeal, Furgerson urges three assignments of error: that the trial court erred by not granting him a new trial; that the trial court erred by not granting his motion for a post-verdict judgment of acquittal because the evidence was insufficient to sustain a conviction; and that his sentence is excessive. When issues are raised on appeal concerning both the sufficiency of the evidence and one or more trial errors, this court reviews the sufficiency of the evidence claim first because if the entirety of the evidence is insufficient to support the conviction, the accused must be acquitted and the remaining issues concerning trial error become moot. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); State v. Fuller, 32,734 (La.App.2d Cir.12/17/99), 759 So.2d 104, writ denied, 00-0159 (La.8/31/00), 766 So.2d 1273. Therefore, we shall address Furgerson's three assignments of error in practical order, rather than as briefed.

Sufficiency of the Evidence
In this assignment of error, Furgerson contends that the trial court erred by not granting his motion for post-verdict judgment of acquittal, urging that the evidence presented by the state was not sufficient to support a conviction for possession of 200-400 grams of cocaine. A motion for post-verdict judgment of acquittal raises the question of sufficiency of the evidence and shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916; La.C.Cr.P. art. 821B.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence.
Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La. 1985); State v. Turner, 591 So.2d 391 (La. App. 2d Cir.1991), writ denied, 597 So.2d 1027 (1992).
*1275 This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La. App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
Possession of a controlled dangerous substance is defined in La. R.S. 40:967C as the knowing and intentional possession of cocaine without a valid prescription or order from a practitioner while acting in the course of his profession. Louisiana courts have consistently held that guilty knowledge is an essential element of the crime of possession of a controlled dangerous substance, and such knowledge may be inferred from the circumstances. State v. Goiner, 410 So.2d 1085 (La.1982); State v. Lias, 28,091 (La. App.2d Cir.5/8/96), 674 So.2d 1044; State v. Ferrell, 25,851 (La.App.2d Cir.3/30/94), 634 So.2d 977. Mere presence in an area where drugs are discovered is insufficient to support a finding of possession. State v. Cann, 319 So.2d 396 (La.1975); State v. Ferrell, supra; State v. Young, 618 So.2d 1149 (La.App. 2d Cir.1993). In order to prove possession, the State is not obligated to prove actual possession, rather such a conviction may be supported by a showing of constructive possession. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Douglas, 30,393 (La.App.2d Cir.2/15/98), 707 So.2d 512; State v. Young, 618 So.2d 1149 (La.App. 2d Cir.1993).
In the present case, since the officers did not observe Furgerson with actual possession of the cocaine, the state was required to prove that he constructively possessed it. For a person to constructively possess a drug, it must be subject to his dominion and control, and he must have knowledge of its existence, even though it is not in his physical possession. State v. Douglas, supra; State v. Martin, 29,352 (La.App.2d Cir.5/13/97), 694 So.2d 1209; State v. Perez, 569 So.2d 609 (La. App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991). Factors relevant to whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his access to the area where the drugs were found, and his physical proximity to the drugs. State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989). Drugs found in a car near the driver generally are held to be within the driver's constructive possession. State v. Daniels, 614 So.2d 97, 111 (La.App. 2d Cir.), writ denied, 619 So.2d 573 (1993) (packages of a controlled dangerous substance found in a car near the driver supported conviction for constructive possession); State v. Tyler, supra (drugs found underneath couch cushion in rear of van established constructive possession on part of driver); State v. Kingsmill, 514 So.2d 599 (La.App. 4th Cir.1987), (cocaine found in an open cardboard box in a car constituted constructive possession for all occupants).
The state clearly established, beyond a reasonable doubt, the first element of constructive possession. Furgerson was the driver of the car in which the cocaine was transported. The surveillance officers observed Clark exiting the vehicle from the *1276 passenger seat with the drugs. Furgerson was also the one who decided whether the drug deal was going to happen or not. As such, a rational trier-of-fact could conclude that the cocaine was subject to Furgerson's dominion and control.
The state also proved the second element of constructive possession beyond a reasonable doubt. From his exchange with the undercover officers, Furgerson certainly was aware of the cocaine's presence and knew that a drug deal was taking place involving drugs transported in his car. In addition, Furgerson fled the scene once the officers sought to arrest him; guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Douglas, supra; State v. Riley, 587 So.2d 130 (La.App. 2d Cir. 1991). Evidence of flight, concealment, and attempt to avoid apprehension indicates consciousness of guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Daniels, supra; State v. Thompson, 33,058 (La.App.2d Cir.4/7/00), 758 So.2d 972, 979.
Additionally, proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. State v. Johnson, 404 So.2d 239 (La.1981); State v. Douglas, supra. The facts show that Furgerson drove to a car wash late at night not to wash his car, but to take part in a pre-arranged drug deal at a set time and place. Once at the car wash, he watched his passenger get out and place a bag of cocaine in a nearby trash can, and then pulled into a car wash stall and waited for strangers to arrive, conversed with the undercover officers regarding the pending drug deal, and then watched his passenger get out of the car to go retrieve the bag of white powder after he called off the deal. Because the cocaine was in the amount of 252.41 grams, the state sufficiently proved that Furgerson possessed 200-400 grams of a Schedule II controlled dangerous substance.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved all elements of the crime of possession of 200-400 grams of cocaine, a Schedule II controlled dangerous substance, beyond a reasonable doubt. Jackson v. Virginia, supra. This assignment is without merit.

Motion for a New Trial
Furgerson urges that the trial court erred by not granting his motion for new trial. La.C.Cr.P. art. 851 provides that a new trial shall be granted when the court's ruling on a written motion or an objection made during the proceedings shows prejudicial error. The trial court's decision concerning a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Quimby, 419 So.2d 951 (La.1982).
In his motion for a new trial, Furgerson initially argues that the verdict was contrary to law and the evidence because the evidence presented by the state was obtained by an arrest warrant which did not justify his arrest and failed to support probable cause for an arrest.
La.C.Cr.P. art. 202 delineates, inter alia, that an arrest warrant may be issued by a magistrate when:
(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any; and
(2) The magistrate has probable cause to believe that an offense was committed *1277 and that the person against whom the complaint was made committed it.
The terms of this article require only that the affiant specify the nature, date and place of the offense along with the name of the offender, and that the magistrate who issues the warrant is supplied with facts and circumstances which would reflect probable cause for the issuance of an arrest warrant. If the requisite probable cause is found in such information, the magistrate is authorized to issue an arrest warrant. State v. Haynie, 395 So.2d 669 (La.1981).
Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Wilkens, 364 So.2d 934 (La.1978); State v. Johnson, 363 So.2d 684 (La.1978); State v. Marks, 337 So.2d 1177 (La.1976). Although mere suspicion cannot justify an arrest, State v. Thomas, 349 So.2d 270 (La.1977), the officer does not need sufficient proof to convict. State v. Haynie, supra; State v. Randolph, 337 So.2d 498 (La.1976).
In the present case, Officers Sarpy and Gallion certainly had adequate information to articulate that probable cause existed to justify Furgerson's arrest and satisfy La.C.Cr.P. art. 202. Officer Gallion's arrest warrant affidavit stated that "Thomas L. Furgerson, male, D.O.B. 3-14-69, committed the offense of possession with intent to distribute over 200 grams of a Schedule II controlled dangerous substance." The affidavit further stated that Thomas Furgerson "did knowingly and intentionally possess with intent to distribute over 200 grams of a Schedule II controlled dangerous substance: to wit cocaine, on January 22, 1997, at 6700 block of Linwood Avenue, Shreveport, Caddo Parish, Louisiana." This information clearly specifies the nature, date and place of the offense along with the name of the offender, as required by La.C.Cr.P. art. 202. Additionally, a two-paragraph, 18 line narrative of the events of January 22, 1997 established in detail the facts and circumstances articulating probable cause. The magistrate who issued the warrant was supplied with this information. The trial court therefore did not err by denying Furgerson's motion for new trial on this basis.
In his second argument, Furgerson contends that the verdict was contrary to law and the evidence because the identification evidence and testimony presented by the state was tainted and insufficient to support a guilty verdict of possession of cocaine between 200 and 400 grams.
To suppress an identification, the defendant must prove the procedure involved to be suggestive and that the totality of circumstances presented a substantial likelihood of misidentification. State v. Martin, 595 So.2d 592 (La.1992); State v. Davis, 27,961 (La.App.2d Cir.4/08/96), 672 So.2d 428. Factors to consider in determining whether the reliability of an identification may outweigh the suggestiveness of the employed procedures are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Tolbert, 716 So.2d 949 (La.App.2d Cir.8/19/98).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale *1278 requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (1990); State v. Royal, 527 So.2d 1083 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (1988).
Although Officer Sarpy had never met Furgerson prior to the aborted drug deal, and it is impossible to identify anyone from the surveillance video tape, Sarpy testified that he positively identified Furgerson as the driver of the green Nissan. During the deal, Sarpy had ample opportunity to get a clear look at Furgerson; Sarpy testified that he drove up five to seven feet from the driver's side of the car and that the area was well lit. Further, Sarpy testified that because of his experience with undercover DEA drug busts, he always makes, and did in fact that night make, a deliberate, conscientious effort during his interaction with the suspect to study his physical appearance specifically for the purpose of later identification. Given Furgerson's distinctive facial markings (the combination of a teardrop tattoo under his right eye and a gold tooth), misidentification is highly unlikely, particularly when made by a trained police officer.
Furgerson incorrectly argues that the officers' testimony was contradictory because Agent Michael Tong testified that he did not see the teardrop tattoo or gold tooth and Sarpy never commented on Furgerson's baldness. In his testimony, Agent Tong described the driver as "bald" but never stated that the suspect did not have the tattoo or gold tooth. Since Tong was in the surveillance van, it is reasonable to conclude that Furgerson's baldness was the most distinctive feature noticeable to him, whereas Sarpy was able to view Furgerson much closer. Further, Sarpy's identification was corroborated by Officer Gallion, who also testified that he saw the tattoo and gold tooth.
This court does not assess credibility or re-weigh evidence, State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Adams, 30,815 (La.App.2d Cir.6/24/98), 715 So.2d 118, and in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support the requisite factual finding. State v. White, supra; State v. Gradick, 29,931 (La.App.2d Cir.1/22/97), 687 So.2d 1071; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992). Moreover, positive identification by one witness may be sufficient to support the conviction. State v. Adams, supra; State v. White, 28,095 (La. App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96,1459 (La.11/15/96), 682 So.2d 760. Since there was no internal contradiction or irreconcilable conflict in Furgerson's identification by the officers, Officer Sarpy's testimony, alone, is sufficient.
Furgerson also contends that the evidence presented at trial by the state did not support the finding that he was a "principal" to the offense charged. A principal is defined as "all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly counsel or procure another to commit the crime." La. R.S. 14:24. Only those persons who knowingly participate in the planning or execution of a crime are *1279 principals. State v. Knowles, 392 So.2d 651 (La.1980). Mere presence at the scene is therefore not enough to "concern" an individual in the crime. State v. Schwander, 345 So.2d 1173 (La.1977); State v. Jasper, 28,187 (La.App.2d Cir.6/26/96) 677 So.2d 553.
In the present case, as noted above, Furgerson's actions indicate much more than just his mere presence at the crime scene. In fact, there is nothing in the record to suggest that he lacked the requisite intent for a conviction of possession of a controlled dangerous substance.[2] This argument is devoid of merit.
Similarly, Furgerson urges that the trial court committed prejudicial error by denying his pre-trial motion for severance. Furgerson contends that he was denied a fair trial because the evidence relating to him was "based solely on hearsay identification evidence" which was eclipsed by the strong evidence of Clark's actual possession of the cocaine.
La.C.Cr.P. art. 704 provides that jointly indicted defendants shall be tried jointly unless: (1) the State elects to try them separately; or (2) the court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
A trial judge's determination of whether to grant or deny a severance rests in its sound discretion, and this court will not reverse his ruling absent clear abuse. State v. Jenkins, 340 So.2d 157, 166 (La.1976). Whether justice requires a severance must be determined by the facts of each case. State v. Turner, 365 So.2d 1352 (La.1978). A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent a co-defendant attempts to place the blame on the other, causing each defendant to defend against his co-defendant as well as the State. Turner, supra. The burden is on the defendant to satisfy the trial court that justice requires a severance. State v. Williams, 416 So.2d 914 (La.1982). Mere allegations are insufficient. Id. A trial court's ruling on a severance motion will not be reversed on appeal absent clear showing that the trial court abused its discretion. State v. Huff, 27,212 (La. App.2d Cir.8/23/95), 660 So.2d 529, writ denied, 96-0212 (La.5/1/97), 693 So.2d 754.
Furgerson does not argue that his defense and Clark's defense are mutually antagonistic or that a co-defendant would give exculpatory testimony if the severance were granted; rather, he merely alleges that the evidence relating to Clark unfairly prejudiced his trial, which he claims was premised on "hearsay identification evidence"a contention which we have rejected as meritless above. As such, this mere allegation fails to satisfy his burden of showing that justice required a severance. The trial judge's decision to disallow severance of appellant's trial from Rickey Clark's was discretionary under La.C.Cr.P art. 704 and is not reversible error. This argument lacks merit.

Excessive PunishmentFine
In his third assignment of error, Furgerson contends that his sentence to serve 30 years at hard labor and to pay a fine of $100,000.00 or, in default thereof, to serve *1280 1,000 days in the parish jail, credit for time served is excessive. We disagree.
La. R.S. 40:967F(1)(b), provides, in pertinent part:
Any person who knowingly or intentionally possesses two hundred grams or more, but less than four hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of La. R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than twenty years, nor more than sixty years, and to pay a fine of not less than one hundred thousand dollars, nor more than three hundred fifty thousand dollars. (Emphasis added.)
Furgerson argues that a large fine for an indigent defendant and the imposition of a 30-year sentence amounts to an excessive sentence. The court, however, was mandated to impose a fine of at least $100,000.00. Because the court chose the mandatory minimum and could have imposed a much greater fine, $100,000.00 is not excessive.
We note, however, that the trial court erred in imposing default time for failure to pay the fine and court costs before a finding that Furgerson was not indigent. This is because an indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991); State v. Mack, 30,832 (La.App.2d Cir.6/24/98), 715 So.2d 126; State v. Hughes, 587 So.2d 31 (La.App. 2d Cir. 1991), writ denied, 590 So.2d 1197 (1992). Although a defendant is presumed indigent if he is unable to afford counsel, and in the present case, Furgerson was represented at trial by appointed counsel, we note that he has apparently retained private appellate counsel. As such, although Furgerson may have been found indigent for trial purposes, he may nevertheless have an ability to pay the fine. State ex rel. Armstead v. State, 589 So.2d 1050 (La.1991) (presumption of indigency may be rebutted with evidence placed into the record establishing the defendant's ability to pay the fine); State v. Collins, 32,409 (La.App.2d Cir. 12/18/99), 763 So.2d 618, 627; State v. Moreau, 31,879 (La.App.2d Cir.3/31/99), 735 So.2d 717. Accordingly, the sentencing court shall hold a hearing to inquire into Furgerson's ability to pay, and if Furgerson is indeed indigent, then the default time must be deleted. State v. Collins, supra. In this event, the trial court has the option to fashion alternative measures of punishment other than imprisonment to include installment payments for community service. Bearden v. Georgia, supra; Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); State v. Lewis, 506 So.2d 562 (La.App. 2d Cir.1987); State v. Perkins, 514 So.2d 503, 504 (La.App. 2d Cir.1987). In addition, pursuant to La. R.S. 15:574.4 J and K, payment of a fine may be made a condition of parole by the parole board. Further, La.C.Cr.P. art. 886 permits the state to enforce collection of a fine and costs in the same manner as a money judgment in a civil case. State v. Conley, 570 So.2d 1161 (La.1990); State v. Wilkerson, 29,979 (La.App.2d Cir.10/29/97), 702 So.2d 64.

Excessive Sentence
The record reflects that Furgerson timely filed his motion to reconsider sentence, which the trial court denied. However, in the motion, Furgerson asserts only that his sentence is excessive. Since the motion for reconsideration merely alleged that the sentence is excessive, under State v. Mims, 619 So.2d 1059 (La.1993), Furgerson is "simply relegated to having *1281 the appellate court consider the bare claim of excessiveness." This bare claim preserves only a claim of constitutional excessiveness. Id.; State v. McEachern, 624 So.2d 43 (La.App. 2d Cir.1993).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
In the present case, Furgerson claims that his PSI was in error because it imputed to him prior transactions between the undercover agents and his brother. The district court was made aware of this fact, however, and specifically stated that he was considering only Furgerson's criminal history and the offense charged. Notably, Furgerson does not contend that the criminal history section of his PSI is in error, and his counsel stipulated to its correctness at sentencing. In 1991, Furgerson was convicted of two prior felonies: simple burglary and the illegal use of a weapon. His parole was subsequently revoked on two occasions; in 1995 for absconding supervision and in 1997 for the possession of a firearm and distribution of cocaine. Additionally, a 1991 charge of illegal possession of stolen things and a 1997 charge of possession of a schedule II CDS with intent to distribute were dismissed by the state. The trial court considered Furgerson's past and concluded that Furgerson was in need of correctional treatment and that a lesser sentence would deprecate the seriousness of his offense. In sum, our review of the record finds no abuse of the trial court's discretion in sentencing this defendant; when Furgerson's sentence of 30 years is viewed in light of his history, felonious past, crime of conviction, and the harm done to society, it does not shock our sense of justice nor is it grossly disproportionate. This assignment of error is without merit.

Conclusion
For the reasons expressed above, Furgerson's conviction and sentence are AFFIRMED; this matter is remanded to the trial court solely for the purpose of holding a hearing to determine whether Furgerson is indeed indigent, and if so, to amend its judgment accordingly.
AFFIRMED; REMANDED FOR INDIGENCY HEARING.
APPLICATION FOR REHEARING.
Before, NORRIS, C.J., GASKINS, CARAWAY, KOSTELKA, AND DREW, JJ.
Rehearing denied.
NOTES
[1] Clark's conviction and sentence to serve twenty years at hard labor without benefit of probation, parole or suspension of sentence were affirmed by this court in State v. Clark, 33,794 (La.App.2d Cir.11/3/00, 774 So.2d 291).
[2] Furgerson also claims that his calling off of the drug deal is probative as to whether he was a principal. Notwithstanding that the deal was aborted only when the drug dealers became suspicious of their purported customers, Furgerson was not convicted or charged with distribution or attempted distribution, but of possession of cocaine. As such, whether the deal was consummated or not is irrelevant to this appeal. If anything, his decision to abort the deal evinces his participation as a principal.