953 So.2d 958 (2007)
STATE of Louisiana, Appellee
v.
James Lewis SERMONS, Jr., Appellant.
No. 41,746-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2007.
*960 Mark O. Foster, for Appellant.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Scott Chafin, Jr., Assistant District Attorney, for Appellee.
Before WILLIAMS, DREW and LOLLEY, JJ.
WILLIAMS, J.
The defendant, James Lewis Sermons, Jr., was charged by bill of information with driving while intoxicated ("DWI"), fourth offense, a violation of LSA-R.S. 14:98. Following a trial by jury, the defendant was convicted as charged. He was sentenced to serve 10 years in prison at hard labor without benefit of probation, parole or suspension of sentence, consecutive with any other sentence, and court costs. For the following reasons, we affirm the defendant's conviction, and we amend the defendant's sentence to impose the $5,000 fine mandated by statute. The sentence is affirmed as amended.

FACTS
On August 3, 2005, at approximately 7:40 a.m., Corporal William Lunsford, Jr. of the Caddo Parish Sheriff's Office responded to a call of a suspicious person at a church located on Colquitt Road in Shreveport, Louisiana. Cpl. Lunsford arrived at the church and found the defendant sitting inside a van parked next to a dumpster. Cpl. Lunsford questioned the defendant, and the defendant stated he had left his girlfriend's house after a disagreement and had pulled into the parking lot. The defendant stated he had been drinking the previous night. Suspecting the defendant was intoxicated, the deputy called to the scene another police unit equipped with a video recorder.
Corporal Gregory Ardoin arrived at the scene with the video recorder and conducted various field sobriety tests on the defendant. The defendant performed poorly. He was placed under arrest and transported to a substation where he submitted to a breath Intoxilyzer test. The test results revealed that the defendant's blood alcohol concentration was .207 percent. The defendant was charged with DWI, fourth offense. Following a jury trial, the defendant was convicted as charged. He was sentenced to serve 10 years in prison at hard labor without benefit of probation, parole or suspension of sentence, consecutive with any other sentence, and court costs.[1] This appeal followed.

DISCUSSION
Sufficiency of the Evidence
The defendant argues the evidence was insufficient to support a conviction. Specifically, the defendant contends the state failed to prove he was actually operating his vehicle while intoxicated. The defendant also argues that the state failed to present evidence that the parked van was operable.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State *961 v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
LSA-R.S. 14:98 provides, in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood. . . .
To convict a defendant of DWI, the prosecution need only prove that he was operating a vehicle and that he was under the influence of alcohol or a controlled dangerous substance. LSA-R.S. 14:98; State v. Presson, 39,688 (La.App. 2d Cir.4/6/05), 900 So.2d 240; State v. Taylor, 38,574 (La.App. 2d Cir.8/18/04), 880 So.2d 197.
In the instant case, the state presented the testimony of several witnesses, including Cpl. Lunsford. Cpl. Lunsford testified that he was responding to a call at a church on Colquitt Road when he noticed the defendant sitting in a van parked next to a dumpster in the parking lot of the church. He questioned the defendant and the defendant stated he had left his girlfriend's house following an argument and pulled into the parking lot. The defendant admitted he had been drinking but stated he was not drinking at that time. Cpl. Lunsford radioed to have a video camera-equipped unit respond to the scene.
Cpl. Ardoin arrived on the scene in response to Cpl. Lunsford's call. Cpl. Ardoin testified that he initially noticed the defendant had a very strong odor of alcohol on his breath, swayed while standing and had slurred speech. Cpl. Ardoin, an instructor for field sobriety testing, administered *962 several standard field sobriety tests, including the horizontal gaze nystagmus test, the finger count and a count backwards test.[2] The defendant performed poorly on all tests administered. The defendant admitted he had been driving the van and that he had been drinking the night before. According to the defendant, he had stopped drinking around midnight the night before submitting to the tests. The defendant was arrested for DWI after his poor performance on the field sobriety tests. The defendant admitted he did not have a driver's license and that he had three previous DWI convictions.[3] The defendant was Mirandized at the sheriff's office south substation in Keithville, Louisiana.
The defendant submitted to an Intoxilyzer test on a machine which the state showed was certified and properly maintained. The test results revealed that the defendant's blood alcohol concentration was .207 percent. After the administration of the testing, Cpl. Ardoin questioned the defendant who again admitted he had been driving the van. The defendant stated he had been driving from his girlfriend's house to the store. The defendant's admissions were recorded by the patrol unit camera and thereafter by cameras inside the substation. The videotape was played for the jury. Cpl. Ardoin testified his car radio was playing during the stop, causing background noise. On cross examination, Cpl. Ardoin acknowledged he did not actually see the defendant driving the vehicle nor did he conduct any interviews with anyone who saw the defendant operating the vehicle.[4]
Patricia Hobbs, the defendant's girlfriend of three years, testified on his behalf. Ms. Hobbs testified at approximately 10:00 p.m. on August 2, 2005, the defendant had called her and asked her to come and visit with him or pick him up from the church, where the couple attended services. Ms. Hobbs went to the church (approximately one-half mile from her home) and the defendant rode to her home with her. After talking and consuming "a couple of beers" Ms. Hobbs decided to go to bed sometime around midnight. She invited the defendant to sleep over in her grandson's room.
Ms. Hobbs testified that she awakened the following morning between 7:00 and 7:30. She stated that she rushed to have the defendant leave her home because she was expecting her father who did not like the defendant. Ms. Hobbs testified she drove the defendant to his van at the church. As the defendant was slow in becoming alert, Ms. Hobbs stated she took the defendant's keys and started his van then moved it near the trash dumpsters so the defendant could clean it out. Ms. Hobbs then rushed the defendant out of her truck so she would be at her home when her father arrived. When she returned *963 home and discovered it was not as late as she had thought, Ms. Hobbs returned to the church to deliver some food to the defendant. She stated that it was her intention to return to the church to pick the defendant up after her father left her home.
According to Ms. Hobbs, approximately 15 minutes after she returned home, she received a telephone call from the deputies informing her that the defendant had been arrested and they wanted her to come to pick up the van. A deputy eventually picked Ms. Hobbs up from her home to take her to the church. Ms. Hobbs was unable to start the vehicle with the keys given to her on the scene so she was returned to her home. She was told that the van would have to be towed. Ms. Hobbs testified the van had not been moved from the dumpster area where she had parked it. On cross examination, Ms. Hobbs indicated she was not aware that the defendant admitted he had been driving the van.
On the videotape admitted into evidence, the defendant could be heard telling the deputy that he had just left his girlfriend's house and was en route to his mother's home. He explained that his girlfriend's parents were coming to her house and he could not be there when they arrived. The defendant informed the deputy that he had stopped drinking at approximately midnight the previous night. The defendant also stated that he had pulled into the church parking lot to retrieve a large piece of plastic he had seen near the dumpster. He stated that he had planned to use the plastic to cover the carpet in his van. Later in the video, the defendant told the deputy that he had just left his girlfriend's house to go to the store.
The videotape of the interview at the sheriff's substation shows Cpl. Ardoin receiving a telephone call from someone who appeared to be near the defendant's van. Cpl. Ardoin questioned the defendant with regard to the location of the keys to the vehicle. The defendant indicated that the keys were either in the ignition of the vehicle or in a compartment. The defendant also stated that it was necessary to manipulate the key in the ignition in order to start the vehicle.
This court has previously found sufficient evidence to support a conviction in factual situations similar to the instant case. In State v. Joseph, 36,776 (La.App. 2d Cir.1/29/03), 836 So.2d 1206, the defendant caused a motor vehicle accident and fled the scene, leaving his vehicle behind. The abandoned vehicle's registration was located in the glove compartment, and two police officers proceeded to the address listed on the registration. Approximately 25 minutes after the accident, the officers encountered the defendant at the address on the registration and could detect an odor of alcohol on him. The defendant was arrested and transported to the police station where he underwent field sobriety testing and submitted to an Intoxilyzer test. The defendant admitted that he had been driving the vehicle at the time of the accident and he had been drinking on the morning of the accident. The result of the Intoxilyzer, which was administered approximately two hours after the accident, was 0.155 percent blood alcohol concentration. This court concluded that the evidence was sufficient to support the defendant's conviction, noting that in the videotape of the defendant's sobriety testing, the defendant had admitted to consuming alcohol prior to the accident and to driving the vehicle at the time of the accident.
In State v. Edens, 465 So.2d 954 (La. App. 2d Cir.1985), the sheriff's department responded to a call that a van had struck an obstacle on Interstate 20. The deputy arrived at the scene and found a locked *964 and abandoned van on the interstate. Soon thereafter, a state trooper stopped a vehicle in which the defendant was a passenger. The defendant stated that he had consumed four beers, fell asleep while driving the van and struck a bridge on the interstate. The defendant performed poorly on the field sobriety test and subsequent test results revealed a .17 percent blood alcohol concentration. On appeal, this court rejected the defendant's argument that the state had failed to prove that he was operating a motor vehicle while intoxicated. This court concluded that the state was permitted to rely upon the defendant's inculpatory statement to the police officer and had met its burden of proving that the defendant had been operating a motor vehicle.
In the instant case, considering the evidence in the light most favorable to the prosecution, we find the evidence was sufficient to establish that the defendant was under the influence of alcohol and was operating the vehicle while under the influence of alcohol. The defendant admitted to the deputies that he had been drinking the previous night and he had driven his van from his girlfriend's house to the church. The defendant failed multiple field sobriety tests and he tested well above the legal limit on the Intoxilyzer test administered after his arrest.
Ms. Hobbs' testimony that she had moved the van to its location near the dumpster was contrary to the defendant's videotaped statements to the deputies. Her testimony was also belied by the fact that she was unable to start the van after she was brought to the scene to move it from the parking lot. Had Ms. Hobbs actually moved the van, it is probable that she would have known, as the defendant informed the deputy on the videotape, that the van was difficult to start without the ignition being manipulated.
Additionally, there is no evidence to support the defendant's contention that the van was inoperable. It is clear from the evidence presented during trial that the van started after the tow truck driver manipulated the key in the ignition as instructed by the defendant. Additionally, in his statements to the arresting officers, the defendant admitted that he had driven the van to the church that morning.
This assignment of error is without merit.
Excessive Sentence
The defendant further contends his sentence is excessive in that it fails to provide for mandatory substance abuse treatment as required by statute. The defendant points out that he had a prior conviction for DWI, fourth offense and the sentence received for that conviction did not provide for substance abuse treatment. Therefore, according to the defendant, that sentence should not be considered as a previous probation which would mandate that he receive a sentence without benefits for the instant offense.
Contrarily, the state urges that the defendant's sentence without benefits is mandated by statute as the defendant previously received the benefit of suspension of sentence and probation for his prior DWI, fourth offense conviction. The state further notes that the defendant was on probation at the time of the commission of the instant offense.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. *965 A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Hogan, 480 So.2d 288 (La. 1985); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. McCall, 37,442 (La.App. 2d Cir.8/20/03), 852 So.2d 1162.
Sentencing under LSA-R.S. 14:98 E(1) is unavailable to defendants who have previously been required to participate in substance abuse treatment and home incarceration as third offenders or who have previously received the benefit of suspension of sentence, probation or parole as fourth offenders. State v. Curry, 39,153 (La.App. 2d Cir.12/15/04), 889 So.2d 1202, writ denied, XXXX-XXXX (La.3/17/06), 925 So.2d 532; State v. Corbitt, 2004-2664 (La. App. 1 Cir. 6/10/05), 917 So.2d 33, writ denied, XXXX-XXXX (La.2/3/06), 922 So.2d 1174.
After denying several post-trial motions, the trial court revoked the defendant's probation in his previous DWI, fourth offense case.[5] The previously imposed 15-year sentence was reduced to 12 years. In the instant case, the trial judge sentenced the defendant to 10 years at hard labor without benefit of probation, parole, or suspension of sentence to run consecutively with any other sentence. The defendant was also ordered to pay court costs within one day or serve one day with credit for time served.
After being sentenced, the defendant inquired with regard to whether his sentences could be imposed concurrently. The following exchange took place between the defendant, his attorney and the court:
DEFENDANT: It cannot be consecutive?
COURT: They are run consecutive.
DEFENDANT: They can't run concurrent?
COURT: No, sir, that's in accordance with the statute I read to you. It cannot be suspended, and it must be consecutive, and that's under 14:98(4)(b).
DEFENSE COUNSEL: Your Honor, we would object to the sentence based on the fact that there is no evidence that Mr. Sermons received any inpatient treatment or was part of substance abuse counseling. We believe that he would fall within the category where it could be suspended.
COURT: I will note that for the record; however, the (4)(a) brings that into *966 play, but (4)(b) dictates what happens to Mr. Sermons in this particular case, but your objection is noted for the record.
The defendant now argues that he was not required to participate in substance abuse treatment upon his first conviction for DWI, fourth offense. Therefore, on this, his second fourth offense conviction, he should be sentenced to the mandatory treatment as required by statute.
LSA-R.S. 14:98(E) provides, in pertinent part:
(1)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Sixty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court, in its discretion, may suspend all or any part of the remainder of the sentence of imprisonment. If any portion of the sentence is suspended, the offender shall be placed on supervised probation with the Department of Public Safety and Corrections, division of probation and parole, for a period of time not to exceed five years, which probation shall commence on the day after the offender's release from custody (Emphasis added).
* * *
(4)(a) If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but shall be imprisoned at hard labor for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole.
(b) If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.
Pursuant to the plain language of the statute, the defendant's argument clearly fails. As the trial court noted, the defendant was sentenced in accordance with LSA-R.S. 14:98(E)(1) and (E)(4)(b), as was proper in this instance. Following his prior conviction for DWI, fourth offense, the defendant was placed on probation and was actually on probation at the time of the instant offense. The defendant's previous suspension of sentence and probation for DWI, fourth offense require that the defendant be sentenced in accordance with LSA-R.S. 14:98(E)(4)(b). This sentencing provision statutorily mandates that the sentence must be imposed without benefit of suspension of sentence, probation, or parole, and the sentence must be imposed consecutively with the remaining balance of the sentence for the revoked probation.
Considering this defendant had a prior DWI fourth offense conviction, and the fact that the defendant was on probation at the time of the commission of the instant offense, the sentence imposed in this case is not constitutionally excessive. The trial court imposed the minimum sentence possible in this matter. The defendant *967 has not shown any circumstances which would indicate that this statutorily mandated sentence is excessive when applied to him. When this repeat offender's crime and minimum punishment are viewed in light of the harm done to society, there is nothing about this sentence that shocks the sense of justice. There is no showing of abuse of the trial court's wide discretion in sentencing this defendant.
This assignment of error is without merit.

ERRORS PATENT
In accordance with LSA-C.Cr.P. art. 920, all appeals are reviewed for errors patent on the face of the record. A review of the record herein reveals three errors patent.
Sentencing Delay
The record reveals that the trial court denied the defendant's motions for new trial and post-verdict judgment of acquittal in open court on May 4, 2006, the same day the sentence was imposed. There is no indication in the record that the defendant expressly waived the sentencing delay. LSA-C.Cr.P. art. 873, provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
When the defendant makes no showing of prejudice, the trial court's failure to observe LSA-C.Cr.P. art. 873 is a harmless error, and there is no need to remand for resentencing. State v. Moossy, 40,566 (La.App. 2d Cir.3/10/06), 924 So.2d 485, 488 (citing State v. White, 404 So.2d 1202 (La.1981); State v. Drane, 36,230 (La.App. 2d Cir.9/19/02), 828 So.2d 107, writ denied, 2002-2619 (La.3/28/03), 840 So.2d 566).
In this case, the defendant has not objected to the trial court's failure to observe the delay. In fact, upon denying the defendant's motions, the trial court inquired, "Are you ready for sentencing?" Defense counsel responded, "We are ready for sentencing." Moreover, there was no showing of prejudice. Thus, the trial court's failure to observe the statute with regard to the sentencing delays was harmless error.
Default Jail Time/Indigent Defendant
In imposing the defendant's sentence, the trial court also ordered the defendant to pay court costs or, in default thereof, to serve one day in jail, "concurrently, credit for time served."
LSA-C.Cr.P. art. 884 provides:
If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year. . . .
In this case, the trial court gave the defendant "credit for time served" in default of payment of the fines. The record indicates that the defendant was arrested on August 3, 2005 and remained incarcerated when the preliminary hearing was held on September 26, 2005. Thus, the defendant has the necessary credit for time served to satisfy his sentence of one day in jail in the event of default of payment of the court costs. Thus, this matter requires no action from this court.[6]
*968 Mandatory Fine
LSA-R.S. 14:98(E)(1)(a) provides that upon conviction of DWI, fourth offense, in addition to the prison sentence, the offender "shall be fined five thousand dollars." In this case, the trial court failed to impose the mandatory fine, resulting in an illegally lenient sentence.
A court of appeal has the authority on its own motion to correct the sentence imposed under LSA-R.S. 14:98(E)(1)(a) by directing the trial court to add the mandatory fine of $5,000 required by that statute. State v. DeCrevel, XXXX-XXXX (La.5/16/03), 847 So.2d 1197. See State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790; State v. Clemons, XXXX-XXXX (La.App. 5 Cir. 2/26/02), 811 So.2d 1047, writ denied, XXXX-XXXX (La.11/22/02), 834 So.2d 972. See also, State v. Masters, 37,967 (La.App. 2d Cir.12/17/03), 862 So.2d 1121. Further, an appellate court may amend a defendant's sentence without the necessity of remanding the matter to the trial court. State v. Volgamore, 38,054 (La.App. 2d Cir.1/28/04), 865 So.2d 237. Therefore, we hereby amend the defendant's sentence to impose the statutorily mandated fine of $5,000.

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. The sentence is hereby amended to impose the mandatory fine of $5,000 in addition to the term of imprisonment imposed, and the sentence is otherwise affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED.
NOTES
[1] In imposing the sentence, the trial court noted that the offense was committed while the defendant was on probation for a previous conviction of DWI, fourth offense. The trial court revoked the defendant's probation, reduced the original 15-year sentence to 12 years and ordered the sentence to run consecutive with the current sentence.
[2] The state presented evidence of Cpl. Ardoin's certification as an instructor in standardized field sobriety testing. During his testimony Cpl. Ardoin provided an in-depth description of the various field tests that can be administered to determine if an individual may be under the influence of alcohol and/or controlled dangerous substances.
[3] The parties stipulated that the defendant had three prior convictions for DWI, and the state also introduced documents evidencing the defendant's prior convictions.
[4] After the defendant was transported to the police substation, Cpl. Lunsford conducted an inventory of the van and found a set of vehicle keys. The defendant's girlfriend was brought to the scene by Cpl. Lunsford to retrieve the vehicle, but she was unable to start the van. A tow truck was called, and the driver of the tow truck was able to manipulate the key to start the vehicle.
[5] On March 15, 2004, the defendant was sentenced after entering a guilty plea to DWI, fourth offense. The defendant was sentenced to 15 years in prison at hard labor, with all but 60 days of the sentence suspended, and the defendant was placed on supervised probation for four years.
[6] We are cognizant of the jurisprudence which provides that an indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991). In this case, the defendant was represented at trial and on appeal by the indigent defender's office and the Louisiana Appellate Project. While it is presumed that the defendant is indigent, this is a rebuttable presumption. See, State v. Monson, supra; State v. Collins, 32,409 (La.App. 2d Cir.9/22/99), 763 So.2d 618.

For example, in State v. Collins, supra, the defendant was represented by the indigent defender board during the trial, and this court deleted the portion of his sentence providing for a fine. However, this court granted rehearing and remanded the matter for a hearing to determine whether the defendant was in fact indigent. See also, State v. Furgerson, 34,344 (La.App. 2d Cir.3/2/01), 781 So.2d 1268, writ denied, XXXX-XXXX (La.3/22/02), 811 So.2d 921; State v. Ebarb, 34,010 (La. App. 2d Cir.11/1/00), 772 So.2d 299. Contrast, State v. White, 39,681 (La.App. 2d Cir.5/11/05), 903 So.2d 580, in which this court concluded from the record that the defendant was indigent because he was represented at trial by the indigent defender office and on appeal by the Louisiana Appellate Project.